[Civil No. 1522.   Filed March 15, 1917.]

[163 Pac. 607.]

THE ARIZONA EASTERN RAILROAD COMPANY, a Corporation, Appellant, v. W. G. MOORE, Appellee.

1. WATERS AND WATERCOURSES — DIVERSION — RAILROAD BRIDGE — UNUSUAL FLOOD.—Evidence in action for injury to land by flood waters of a stream diverted by a railroad bridge, *held* to show that the flood was such as experience indicated must be expected to recur at irregular intervals.

2. WATERS AND WATERCOURSES—DIVERSION OF FLOOD WATERS—INSUFFICIENT RAILROAD BRIDGE.—Evidence *held* to authorize a finding that defendant railroad in constructing a bridge over a river, with trestle over lowlands, negligently failed to provide sufficient waterways for passage of usual flood waters, causing the injury to plaintiff's farm lands by deposits thereon.

3. WATERS AND WATERCOURSES—DIVERSION OF FLOOD WATERS—AMOUNT OF DAMAGES.—Evidence in action for injury to farm lands by deposits from flood waters diverted by railroad bridge over river, with insufficient waterways, *held* sufficient to sustain the verdict as to amount of damages.

   [As to liability of railroad company for diversion of surface water on to land of another, see note in Ann. Cas. 1914A, 1292.]

APPEAL from a judgment of the Superior Court of the County of Maricopa.  R. C. Stanford, Judge.  _ .firmed.

Mr. Eugene S. Ives and Mr. G. P. Bullard, for Appellant.

Messrs. Baker & Baker, for Appellee.

CUNNINGHAM, J.—The appellee as plaintiff commenced this action to recover $12,500 as damages alleged to have resulted from injuries to his farm lands, crops, fences, sorghum mill, and for the loss of cordwood, from a flood or freshet, which he alleges was diverted from the channel of the Agua Fria river on to said lands on January 29, 1915, by defendant railroad's trestle bridge across said river.

The alleged proximate cause of plaintiff's damage was the drift and débris carried by the flood waters, stuffing and choking the river by forming a dam against the piling and other

bridge supports, which impounded the waters back over plaintiff's bottom farm lands to such height, that as a natural result the roadbed embankments adjacent to plaintiff's said lands gave way and broke through and allowed the impounded water to rush through the said breaches. The waters washed holes and ditches in the lands and deposited sand and gravel and débris on other of the lands, and thereby destroyed the lands for agricultural purposes, and destroyed crops thereon, carried away the wood piled thereon, and wrought the damages to the amount claimed.

Plaintiff alleges that such damages proximately resulted from defendant's negligence; that such negligence consists in the defects of the plans followed by the defendant in the construction of its said railroad trestle bridge, and in the insufficient strength of the material used by it in the construction of a certain embankment. Plaintiff alleges that the said bridge "is entirely too small and without reasonably sufficient waterways or openings to afford an outlet for the free passage of the waters of said river, bearing débris, so that the said river becomes dammed and choked up and the waters thereof are made to impound back upon the said lands of the plaintiff and break through and over said embankments, . . . and the said embankments were constructed so small and with such weak material and without any waterways . . . " or re-enforcements for protection against the force of the river waters overflowing the lands, and the waters from such defects are made thereby "to flow back upon . . . and break through and over said embankments and overflow the said lands of the plaintiff to their injury." The defendant answered by pleading a general denial of all of the material allegations of the complaint. The jury returned a verdict for the plaintiff, and assessed his damages at $10,000. From the judgment and order refusing a new trial, defendant appeals.

The uncontroverted facts established by the evidence fairly show that the plaintiff has cultivated a tract of land, described in the complaint, a great many years; that the land lies immediately adjacent to and on the west of the Agua Fria river; that the general course of the river is from the north to the south; that the bed of the river during the greater part of the year is from 60 to 150 feet in width; and that the lands of plaintiff lie west of the river-bed and nearest the said river-

bed the surface is about 4 feet higher than the bed of the river, and slopes westward so that a portion of plaintiff's bottom lands, about 1,700 feet west of the river, is about one foot lower than the river-bed.

During the year 1910 the defendant constructed a railroad over plaintiff's lands, westerly from the river, crossing so that the railroad passed over plaintiff's bottom lands diagonally. Over the river, defendant constructed a trestle bridge, and thence from the westerly end of the bridge a trestle, both bridge and trestle having a length of about 1,200 feet. The structure is principally of timber, and the supports are pilings driven into the earth. The pilings supporting the bridge bents leave openings about 13 feet between them lengthwise with the bridge, and the pilings are braced with crossed timbers parallel with the river. Embankments were thrown up as approaches to the trestle and bridge structure, of the surrounding earth. The bridge, trestle and embankments supported defendant's rails, and all together constitute defendant's railroad.

On January 29, 1915, a flood or freshet came down the river. The flood waters carried great quantities of drift. The flood waters overflowed the river banks, spread over plaintiff's adjacent lands, reaching to within about 18 inches of the top of the said embankments. Thereupon the embankments gave way in several places, and the waters rushed down over plaintiff's lands south of the railroad. The result was that plaintiff's lands on both sides of the railroad were washed in ditches and holes, and great quantities of sand and débris piled upon the lands not washed, so that large portions of plaintiff's bottom lands were damaged, his fences destroyed, wood cut and piled on the lands was carried away, and a sorghum mill damaged, and pasturage on the lands destroyed.

A controversy arose on the trial as regards the cause of the waters overflowing plaintiff's lands. The plaintiff contends that the plan followed by the defendant in constructing the trestle bridge resulted in placing a bridge structure over the stream which was insufficient to allow the flood waters which usually, at irregular intervals, course down the Agua Fria river to pass under, but such bridge as constructed impedes and obstructs the usual floods and the drift carried by such floods, stuffs and jams against the bridge structure, and thereby forms a dam; that such dam was so formed against the

bridge structure on January 29, 1915, and caused the damage to plaintiff; that the defendant knew or ought to have known that the bridge as constructed with the approaches would cause the waters to dam and injure plaintiff's lands, and was therefore negligent.

The defendant endeavors to meet this contention from two opposing viewpoints: First, the defendant seems to contend that the flood that occurred in the river on January 29, 1915, amounted to an extraordinary freshet of such unusual nature that defendant could not anticipate and properly guard against it in the construction of its trestle bridge across the river. Second, that the bridge structure was not the efficient proximate cause of the plaintiff's damage, but that the flood waters were obstructed by trees allowed to grow in the riverbed above the railroad right of way, which obstruction diverted the flood waters from the river channel on to plaintiff's lands, causing the damages thereto.

The first-mentioned contention—that is, the contention that the flood of January 29, 1915, amounted to an extraordinary occurrence—is obviated by defendant's principal witness, Mr. Gilbert's testimony, as follows, quoting from the abstract of record, to wit:

"In my opinion as an expert that bridge is a standard railroad trestle bridge over torrential streams in Arizona. In my opinion as an expert, that bridge was of sufficient strength to withstand anything except extraordinary floods."

This testimony, considered with the physical fact that the bridge did actually withstand the flood of January 29, 1915, is sufficient from which to draw the inference that the flood of January 29, 1915, did not amount to an extraordinary flood. The testimony of plaintiff on this question is to the same effect. Fairly considered, the evidence tending to show that the flood in question was such a flood as experience indicated must be expected to recur at irregular intervals is without conflict.

The second controversy, the cause of the damage, whether caused by the drift stuffing against the trestle bridge, thereby forming a dam, and diverting the water on to plaintiff's lands, or whether the trees allowed to grow in the river-bed diverted the floods on to plaintiff's lands, became the real issue of fact in the trial. Upon this controversy evidence was introduced by both sides, and the evidence on the controversy is sharply

conflicting. The court fully and fairly submitted this controversy to the decision of the jury, and the jury's verdict is a determination in favor of the plaintiff. The jury must necessarily have found as a fact that the flood of January 29, 1915, was such flood as must be reasonably expected to occur in the Agua Fria river; that the trestle bridge actually obstructs the flood waters, and dammed the waters back diverting them on to plaintiff's lands, and caused the railroad embankments to give way, and injure plaintiff's said lands.

Defendant had caused the levels of plaintiff's lands to be surveyed along its right of way at the time of the construction of its railroad, and retained a record of those levels. It admits that it knew from such survey that the western portion of plaintiff's bottom lands was a few feet lower than the bed of the river at the point on the river where the bridge was constructed. It is therefore chargeable with knowing that obstructions placed in the river would have a natural tendency to cause the usual flood waters to flow over plaintiff's lands in seeking lower levels. Consequently, defendant's failure to provide against such natural law is negligence. Insufficient provision in this regard is likewise negligence. The jury were amply justified in finding defendant negligent in failing to provide sufficient waterways for the passage of the usual and expected flood waters under the trestle bridge.

Defendant contends that the amount of damages is excessive and not supported by the evidence.

The testimony of the plaintiff is that about 40 acres of his lands lying north of the railroad were totally destroyed, and that 160 acres of land lying south of the railroad were damaged to the extent of three-fourths of their value; that the market value of the land damaged was $100 an acre at the time of the injury thereto. The amount of the damages to the land on the basis of plaintiff's personal testimony is $4,000 to the lands on the north side of the railroad, and $12,000 to the lands on the south side, or $16,000 damage to the lands. To this he added the destruction of fences, worth $500 on the north side, and $1,000 on the south side; 35 cords of wood worth $3 a cord, or $105 for wood destroyed; also pasturage worth $200 on the lands on the north side, and pasturage worth $300 on the south side lands; also a sorghum mill destroyed, worth $65—making a total claim of

$18,170.  From this claim must be excluded the items claimed
for the destruction of the fences, viz., $1,500, and the destruc-
tion of the permanent pasturage, viz., $500, leaving the just
claim for damages at $16,170.  The fences and permanent
pasturage on the lands are parts of the realty, pass with the
lands, and therefore in the value of the land is included the
value of the fences and grazing pasturage.  The destruction
of the land necessarily includes the destruction of the appur-
tenances to the land.  To permit of a recovery for the full
value of the land, and also for the fixtures thereto, means a
double recovery.

The lowest values placed upon the property damaged, for
which plaintiff may recover, and therefore the most favorable
evidence for the defendant on this branch of the case, is briefly
as follows: thirty acres totally destroyed on the north side of
the railroad worth $80 per acre, $2,400; also 120 acres dam-
aged three-fourths of its value of $80 per acre, or $7,200; the
cordwood, worth $105, and the sorghum mill, $50—making a
total sum of $9,755, or $245 less than the verdict.  The differ-
ence is not great.  The amount of recovery fixed by the ver-
dict is sustained by the evidence, and for that reason is not
excessive, and may not be so regarded.

If the jury believed from the evidence that the market value
of the land was $80 per acre, and that 130 acres of land on
the south side of the railroad was damaged three-fourths of
its value, then the damages recoverable on such basis is
$10,355, or $355 in excess of the amount found by the verdict.
In any event, the plaintiff was entitled from the evidence of
the amount of damages to recover the sum of $9,775.

Defendant offered no evidence controverting the amount of
the damages, with the possible exceptions of photographs
showing in a slight degree the character of crops growing on
the ground after the flood.  No amount is referred to in this
evidence upon which a jury could calculate the amount of
damages, unless they considered that the land lying south of
the railroad remained worth one-quarter of its former value
for agricultural purposes.

The numerous assignments of error have been carefully con-
sidered, and I am of the opinion that no result could justly
have been reached other than that which the jury reached.  If
the matters complained of are technical errors, they have

wrought no harm to defendant. A detailed discussion of such matters is of no benefit in this cause, and so a discussion is omitted here.

I find no reversible error in the record, and am of the opinion the judgment must be affirmed.

FRANKLIN, C. J., and ROSS, J., concur.